NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| In the Matter of | : | Case No. 09-38892/JHW |
| Sanford B. Karpo and Rita Karpo<br>Individually and Trading as<br>College Financial Aid Services | : | |
| Debtors. | : | |

|  |  |  |
|---|---|---|
| Audrey Winograd, Scott Goldstein,<br>and Begelman, Orlow & Melletz | : | Adv. No. 10-1132 |
| Plaintiffs | : | **OPINION** |
| v. | : | |
| Sanford B. Karpo and Rita Karpo<br>Individually and Trading as<br>College Financial Aid Services | : | |
| Defendants. | : | |

<table>
<tr><td>
<strong>FILED</strong><br>
JAMES J. WALDRON, CLERK<br><br>
July 22, 2011<br><br>
U.S. BANKRUPTCY COURT<br>
CAMDEN, N.J.<br>
BY: <u>s/ Robert J. Cooper, Judicial</u><br>
<u>Law Clerk to Chief Judge Wizmur</u>
</td></tr>
</table>

APPEARANCES:     Paul R. Melletz, Esq.
                 Begelman, Orlow & Melletz
                 411 Route 70 East, Suite 245
                 Cherry Hill, New Jersey  08034
                 Counsel for the Plaintiffs

                 Jack F. Karpf, Esq.
                 1931 East Route 70
                 Cherry Hill, New Jersey  08003
                 Counsel for the Defendants

The plaintiffs seek a determination of nondischargeability under 11
U.S.C. § 523(a)(2)(A) for the debt due to them from the debtors, and a denial of
the debtors' discharge pursuant to §§ 727(a)(4) and (a)(5).  For the reasons

expressed below, all counts of the plaintiffs' adversary complaint must be
dismissed.

## FACTS AND PROCEDURAL HISTORY

The debtors, Sanford Karpo and his wife, Rita Karpo, operated a
business, College Financial Aid Services ("CFAS"), through which they were
retained to prepare financial aid documents for college bound students.  The
plaintiff, Audrey Winograd, hired the Karpos to prepare and file financial aid
forms for her son, Scott Goldstein, with various colleges and universities.  Scott
was most interested in attending American University in Washington, D.C.  The
untimely filing of an institutional form that was required by American
University as part of Winograd and Goldstein's financial aid application process
caused Scott to receive less financial aid from the school during his freshman
and sophomore years than he otherwise would have received had the proper
procedures been followed.

In 2004, Audrey Winograd and Scott Goldstein brought an action against
the Karpos in the New Jersey Superior Court of Burlington County, Law
Division, charging the Karpos with liability for the lost financial aid from
American University because the Karpos had failed to file the requisite form
with the school in a timely manner.  In their amended complaint, the plaintiffs
alleged four counts:  negligence, breach of contract, a violation of the New

Jersey Consumer Fraud Act, and common law fraud.  With respect to the New

Jersey Consumer Fraud Act, the plaintiffs alleged that the defendants had

asserted in their advertisements that they would file all of the required

financial forms for their clients, that notwithstanding the advertisements, the

defendants knew they did not intend to file such forms, and that the plaintiffs

suffered damages as a consequence of the defendants' failure to act.  At trial,

the plaintiffs also complained that in an attempt to convince American

University to accept the late-filed institutional form, the defendants

impersonated Ms. Winograd by sending a letter to the school falsely

representing that the letter was being sent by Ms. Winograd, and falsely stating

that she was diagnosed with a brain tumor.

Following the state court trial,[1] the state court judge found for the

plaintiffs on the breach of contract count but dismissed the other three counts.

A judgment on the breach of contract count was entered in the amount of

$19,100, plus pre-judgment interest in the amount of $3,590.80, for a total

judgment of $22,690.80.  On the issue of whether the New Jersey Consumer

Fraud Act was violated, the state court rejected the plaintiffs' cause because

the court was unable to "find any unconscionable conduct by the defendants in

---

[1]    The trial commenced before a jury, but was interrupted by the
defendant's medical condition.  By consent, the trial resumed without a jury,
and a decision was rendered by the judge.

this matter."[2]  No explanation was offered in the oral decision rendered by the

court for the dismissal of the common law fraud count.


The defendants appealed the judgment based on the breach of contract

determination, and the plaintiffs cross-appealed the dismissal of the counts for

negligence, common law fraud and consumer fraud.  Upon review, the

Appellate Division left undisturbed the judgment in favor of the plaintiffs on the

breach of contract count, and the dismissal of the counts based on negligence

and common law fraud, but was concerned that "misrepresentations about

Sanford's background" might be actionable under the New Jersey Consumer

Fraud Act.  Winograd v. Karpo, No. A-1666-07T2, 2009 WL 1491341, *4 (N.J.

App. Div. May 29, 2009).  The court noted that:

> In his testimony, Sanford acknowledged that he lied about his
> background and experience.  He was not a tax accountant as he
> purported to be.  Rather, Sanford's experience included traveling
> with a "pool hustler" and working in the family shoe business,
> among other things, before starting CFAS.

Id. at *3.  The Appellate Division remanded the case to the trial court to answer

"whether the defendants' conduct in inducing plaintiffs to retain CFAS in the

first place is remedial under the Consumer Fraud Act."  Id. at *4.


On remand, the trial court noted that "it is clear that the Consumer

Fraud Act was violated by Mr. Karpo's misrepresentation that he was a CPA."

---

[2]     T34-1 through 2 (10/29/07).

Exh. P-1 (Letter Opinion, 10/2/2009).  However, on the issue of whether there

was proof of a causal connection between the defendants' conduct and the

plaintiffs' ascertainable loss to warrant an award under the New Jersey

Consumer Fraud Act, the court found that "there is nothing in the testimony of

Ms. Winograd or her son which would indicate that they retained the

defendants because Mr. Karpo indicated he was a CPA. . . .  Rather the

motivating force [for retaining the Karpos] was that the defendants would

prepare and file the appropriate applications for financial aid."  Id.  The trial

court concluded that because there was no causal connection between the

Consumer Fraud Act violation and the plaintiffs' ascertainable loss, treble

damages under the Consumer Fraud Act could not be awarded.  However,

because a violation of the Act was found, the trial court did award attorneys'

fees to the plaintiffs.  Id.  The previous judgment finding a breach of contract,

but dismissing the negligence and common law fraud counts, remained

enforceable.

Shortly thereafter, on or about October 29, 2009, the Karpos filed a

Chapter 7 bankruptcy petition.  The debtors listed the plaintiffs in their

schedules as unsecured creditors.  On February 1, 2010, the plaintiffs,

Winograd and Goldstein, and their attorneys, Begelman, Orlow & Melletz,

brought this adversary proceeding  alleging that:  (1) the judgment in the state

court case was non-dischargeable under 11 U.S.C. § 523(a)(2)(A) because "the

cross-appeal result[ed] in a finding of consumer fraud and an award of

attorney's fees," Compl. Count 1, ¶ 5, and (2) that the debtors have concealed assets and therefore are not entitled to a discharge under §§ 727(a)(4)(A) and (a)(5).

When the adversary proceeding came on to be heard before the bankruptcy court, the plaintiffs sought to supplement the record of the state court with Audrey Winograd's testimony that she had relied on Sanford Karpo's misrepresentation that he was a tax accountant and CPA when she determined to retain CFAS to prepare and file all of the necessary documents to seek financial aid for her son.  That testimony was taken, without prejudice to the consideration of whether collateral estoppel would preclude an expansion of the state court record.

## **DISCUSSION**

I.    Nondischargeability Under § 523(a)(2)(A).

The plaintiffs assert that the debt due to them from the defendants on their judgment, plus attorneys' fees, cannot be discharged because these claims arose from the defendants' fraudulent conduct.  The plaintiffs contend that their claims are nondischargeable under 11 U.S.C. § 523(a)(2)(A).

Here, the plaintiffs focus on the debtors' misrepresentations regarding Sanford's qualifications as a tax accountant and CPA to contend that the debtors knew that the representations were false, that the debtors intended to deceive the plaintiffs, that the plaintiffs relied on those misrepresentations when they retained the defendants, and that the plaintiffs suffered damages thereby, thus satisfying each of the elements for nondischargeability under § 523(a)(2)(A).  Because the plaintiffs' common law fraud cause of action was dismissed after a full trial, and the plaintiffs' quest to treble their damages under the New Jersey Consumer Fraud Act was rejected by the state court, we must first resolve whether the principle of collateral estoppel, which "bars relitigation of any issue which was actually determined in a prior action, generally between the same parties, involving a different claim or cause of action," Sacharow v. Sacharow, 177 N.J. 62, 76, 826 A.2d 710, 719 (2003) (internal citations omitted), would dictate the outcome of our consideration herein.

A.     Estoppel Not Pled as Affirmative Defense.

We start with the observation that the affirmative defense of estoppel was not pled by the defendants, as required by Fed.R.Civ.P. 8(c) and Fed.R.Bank.P. 7008, and could be deemed to be waived.  Taylor v. United States, 485 U.S. 992, 108 S. Ct. 1300, 1301, 99 L.Ed.2d 510 (1988).  However, it has been noted that:

-7-

> where all of the relevant facts are contained in the record
> before us and all are uncontroverted, we may not ignore their
> legal effect, nor may we decline to consider the application of
> controlling rules of law to dispositive facts, simply because
> neither party has seen fit to invite our attention by technically
> correct and exact pleadings.

Mowbray v. Cameron County, Tex., 274 F.3d 269, 281 (5th Cir. 2001), cert.

denied, 535 U.S. 1055, 122 S. Ct. 1912, 152 L.Ed.2d 822 (2002) (internal

quotations omitted).  The Third Circuit has also recognized that if the parties

try the issue by express or implied consent, there is an exception to the general

rule that affirmative defenses are waived unless pled.  Prinz v. Greate Bay

Casino Corp., 705 F.2d 692, 694-95 (3d Cir. 1983).


Here, the absence of estoppel as an affirmative defense in the pleadings

is technically incorrect, but both parties have relied on the state court record,

and both parties have argued, orally and in written submissions, about the

application of collateral estoppel principles to these facts.  Under the

circumstances presented, I may not ignore the implications of collateral

estoppel, as it may be applicable to the facts presented here.


     B.    Collateral Estoppel.


The principle of collateral estoppel, which prohibits the relitigation of

issues that have been adjudicated in a prior lawsuit, applies in discharge

proceedings in bankruptcy courts.  Grogan v. Garner, 498 U.S. 279, 284 n.11,

111 S. Ct. 654, 658 n.11, 112 L.Ed.2d 755 (1991); In re Docteroff, 133 F.3d 210, 214 (3d Cir. 1997).  In a nondischargeability proceeding under section 523(a), a bankruptcy court must, pursuant to the full faith and credit principles of 28 U.S.C. § 1738, give the same issue preclusion effect to a state court judgment as the judgment would be given under that state's law. 28 U.S.C. § 1738.  See In re Sasson, 424 F.3d 864, 872 (9th Cir. 2005), cert. denied, 547 U.S. 1206, 126 S. Ct. 2890, 165 L.Ed.2d 917 (2006); In re Bayliss, 217 F.3d 66, 70 (1st Cir. 2000).  See also Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 380, 105 S. Ct. 1327, 1331-32, 84 L.Ed.2d 274 (1985).

Under New Jersey law, collateral estoppel may be used to estop a claim when:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding;
>
> (2) the issue was actually litigated in the prior proceeding;
>
> (3) the court in the prior proceeding issued a final judgment on the merits;
>
> (4) the determination of the issue was essential to the prior judgment; and
>
> (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

In re Estate of Dawson, 136 N.J. 1, 20, 641 A.2d 1026, 1034-35 (1994) (citations omitted).  See also Ivashenko v. Katelyn Court Co., 401 N.J. Super. 99, 109, 949 A.2d 279, 285 (App. Div.), certif. denied, 196 N.J. 464, 957 A.2d

1173 (2008); <u>State v. Brown</u>, 394 N.J. Super. 492, 502, 927 A.2d 569, 576

(App. Div. 2007).  Like federal principles of collateral estoppel,[1] New Jersey

courts follow the collateral estoppel guidelines laid out in the Restatement

(Second) of Judgments.  <u>Hernandez v. Region Nine Housing Corp.</u>, 146 N.J.

645, 659, 684 A.2d 1385, 1392 (1996); <u>Konieczny v. Micciche</u>, 305 N.J. Super.

375, 384, 702 A.2d 831, 836 (App. Div. 1997) ("In deciding the [collateral

estoppel] issue, we have been governed by the factors set forth by the

Restatement (Second) of Judgments §§ 27, 28 and 83 (1982).").  In this regard,

section 27 provides:

> When an issue of fact or law is actually litigated and determined by
> a valid and final judgment, and the determination is essential to
> the judgment, the determination is conclusive in a subsequent
> action between the parties, whether on the same or a different
> claim.

RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1982).  Here, collateral estoppel will

not bar the relitigation of the issues of fact and law determined in the context

of the dismissal of the plaintiffs' count grounded in common law fraud, because

the burden of proof to establish common law fraud under New Jersey law is

greater than the burden of proof to establish nondischargeability under §

523(a)(2)(A) of the Bankruptcy Code.  But determinations made by the state

court on certain issues of fact and law pertaining to the defendants' Consumer

Fraud Act violation do preclude relitigation of these issues, and act to defeat

---

[3]     See, <u>e.g.</u>, <u>In re Docteroff</u>, 133 F.3d 210 (3d Cir. 1997); <u>In re Bush</u>,
62 F.3d 1319 (11th Cir. 1995); <u>In re Daily</u>, 47 F.3d 365 (9th Cir. 1995).

the plaintiffs' quest for a declaration of nondischargeability of the debt due to them.

The elements of common law fraud under New Jersey state law are virtually identical to the elements required to be established under § 523(a)(2)(A).  Under New Jersey law, the elements of common law fraud include: "'(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.'" Banco Popular N. Am. v. Gandi, 184 N.J. 161, 172-73, 876 A.2d 253, 260 (2005) (quoting Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610, 691 A.2d 350, 367 (1997)).  As noted, after a full trial of all counts of the plaintiffs' complaint in state court, the trial court determined that the count of the complaint seeking damages on the ground of common law fraud must be dismissed.  On appeal, the trial court's determination on this count remained undisturbed.

Notwithstanding the fact that the elements of the cause of action for common law fraud mirror those of a nondischargeability complaint under § 523(a)(2)(A), collateral estoppel principles cannot be applied to bar consideration of the § 523(a)(2)(A) elements based on the dismissal of the common law fraud count of the plaintiffs' state court complaint.  Under the New Jersey law of common law fraud, the elements of that cause of action

-11-

must be established by clear and convincing evidence.  Stochastic Decisions,

Inc. v. DiDomenico, 236 N.J. Super. 388, 395, 565 A.2d 1133, 1137 (App. Div.

1989), certif. denied, 121 N.J. 607, 583 A.2d 309 (1990).  In contrast, the

elements of § 523(a)(2)(A) must be established by a preponderance of the

evidence.  Grogan v. Garner, 498 U.S. at 291, 111 S. Ct. at 661.  As the

Supreme Court noted in Grogan v. Garner, where a creditor tries

unsuccessfully to prove fraud in a jurisdiction requiring clear and convincing

evidence, but who nonetheless establishes a valid claim by proving, for

example, a breach of contract involving the same transaction, that creditor

would not be barred by collateral estoppel from attempting again to establish

the elements of fraud under § 523(a)(2)(A).  Id. at 285 n.12, 111 S. Ct. at 658

n.12.


Thus, were it not for the state court determinations concerning the

defendants' violation of the Consumer Fraud Act, the plaintiffs here would be

permitted to augment the state court proceedings with the testimony of Audrey

Winograd to determine whether the § 523(a)(2)(A) elements have been met.

However, the conclusions reached by the state court regarding the Consumer

Fraud Act violations preclude the relitigation of the issues that are central to a

§ 523(a)(2)(A) determination.  To understand the interplay between the issues

determined by the state court regarding the defendants' Consumer Fraud Act

violation, and the elements for nondischargeability under § 523(a)(2)(A), we will

first review the § 523(a)(2)(A) elements, and then compare them to the findings

made by the state court with respect to the New Jersey Consumer Fraud Act.


      C.     <u>Elements of § 523(a)(2)(A) Nondischargeability</u>.


Section 523(a) states that:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or
1328(b) of this title does not discharge an individual debtor
from any debt—
     . . .

     (2) for money, property, services, or an extension,
renewal, or refinancing of credit, to the extent obtained by--

     (A) false pretenses, a false representation, or
actual fraud, other than a statement respecting the
debtor's or an insider's financial condition.


11 U.S.C. § 523(a)(2)(A).  The elements that must be proven by a

preponderance of the evidence to prevail under a § 523(a)(2)(A) claim are:


    (1)  the debtor obtained money, property or services through a
        material misrepresentation;

    (2)  the debtor, at the time, knew the representation was false or
        made with gross recklessness as to its truth;

    (3)  the debtor intended to deceive the creditor;

    (4)  the creditor [justifiably][3] relied on the debtor's false
        representations; and

---

[3]    In the 1995 <u>Field v. Mans</u> decision, the Supreme Court held that
only justifiable, not reasonable, reliance on a debtor's fraud or false statements
is required to prevail under § 523(a)(2)(A).  516 U.S. 59, 70-76, 116 S. Ct. 437,
443-46, 133 L.Ed.2d 351 (1995).

(5) the creditor sustained a loss and damages as a proximate
result of the debtor's materially false representations.

In re Cohen, 191 B.R. 599, 604 (D.N.J. 1996), aff'd, 106 F.3d 52 (3d Cir. 1997),

aff'd, Cohen v. de la Cruz, 523 U.S. 213, 118 S. Ct. 1212, 140 L.Ed.2d 341

(1998)(internal citations omitted).

### D.   Application of Collateral Estoppel to § 523(a)(2)(A) Elements.

In their Proposed Statement of Facts, the plaintiffs appear to propose

three bases for their assertion that the application of § 523(a)(2)(A) warrants

the nondischargeability of the debt due to them.  First, the plaintiffs contend

that "Sanford and Rita Karpo committed fraud upon Audrey Winograd by

impersonating her in sending a letter to American University dated March 28,

2008 falsely stating that she was diagnosed with a brain tumor."  Pl. Proposed

Statement of Facts, ¶8.  The issue of whether the letter in question constituted

"unconscionable conduct" was presented to the Appellate Division which

reflected in its opinion on plaintiffs' cross appeal that:  "Certainly, the letter

concerning Winograd's medical condition was totally inappropriate.  However, it

was written to help and assist plaintiffs' attempt to receive financial aid."

Winograd v. Karpo, 2009 WL 1491341 at *3.  The Appellate Division appears to

have been addressing the letter as a violation of the Consumer Fraud Act,

which, like § 523(a)(2)(A), requires that the violation be established by a

preponderance of the evidence.  The conclusion of the Appellate Division that

-14-

the letter, albeit inappropriate, did not provide a basis for liability, collaterally

estops the plaintiffs herein from relitigating the liability of the defendants

regarding the letter, because the requisite element of intent to deceive cannot

be found.  The Appellate Division specifically concluded that the letter "was

written to help and assist plaintiffs' attempt to receive financial aid."  <u>Id</u>.  The

factual issue in this regard before the state court and before this court is

identical, i.e., what purpose did the letter written and sent by the defendants to

American University serve?  The state court's fact finding in this regard was

actually litigated, was incorporated into a final judgment on the merits,[4] the

determination was essential to the judgment, and the parties were the same.

The application of collateral estoppel prevents the letter from serving as a basis

for nondischargeability.


      Second, the plaintiffs complain that:

> The Karpos advertised in their newsletters that they file the
> financial aid forms but they did not file them and claimed that they
> file them in the tax accounting sense of preparing them and giving
> it to the client to file and did not consider the newsletters as being
> something to be bound by.

---

[4]     The Restatement Second defines a final judgment for purposes of preclusion as "any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." RESTATEMENT (SECOND) OF JUDGMENTS § 13 (1982).  <u>See</u> <u>also</u> <u>Hernandez v. Region Nine Hous. Corp.</u>, 146 N.J. at 659, 684 A.2d at 1392 ("New Jersey courts follow the doctrine of collateral estoppel or the rule of issue preclusion described in the Restatement of Judgments.").  Here, the state court, after a full trial and appeal, entered a written opinion resolving the issue posed by the Appellate Division remand.  While a final judgment was not entered, the written opinion represents a sufficiently firm adjudication to be accorded conclusive effect.

Pl. Proposed Statement of Facts, ¶38.  While the plaintiffs have referred to the defendants' monthly newsletters as a basis for their fraud claims against the plaintiffs, at the trial before the state court, the focus was on the original advertisement issued by the defendants, which described the expansive services that the defendants would perform in connection with assistance with financial aid packages.  In this regard, the trial court, in its decision that the conduct of the defendants represented only a breach of contract, and not a violation of the Consumer Fraud Act or common law fraud, concluded that it could not:

> find any unconscionable conduct by the defendants in this matter. . . .  I don't see any – any massive plan by the Karpos to – to, in essence, setup Ms. Winograd and Mr. – Mr. Goldstein by some unconscionable conduct.
>
> First of all, it would not inure to their ben – to their benefit in any way, shape or form.  And second of all, I just think it's a layperson who – who – and there's no indication that this was handled any different than the other of the 44 people who they did work for that year.  So I don't find any unconscionable conduct.

Exh. P-71, T34-1 through 20 (10/29/07).

By this expression, the trial court rejected the plaintiffs' cause that either the original advertisement or the subsequent newsletters provided a basis for liability under the New Jersey Consumer Fraud Act.  This ruling was not disturbed by the Appellate Division on appeal.  These findings effectively bar any attempt to conclude that the original advertisement and the subsequent

newsletters represented a material misrepresentation on the part of the

defendants, through which they intended to deceive the plaintiffs, for purposes

of § 523(a)(2)(A).


The third factual predicate for the plaintiffs' assertion that the debt due

to them from the debtors is nondischargeable under § 523(a)(2)(A) is that "Mr.

Karpo admitted that he had never been a CPA and in fact from the mid-1970's

until 1989, he worked with a pool hustler."  Pl. Proposed Statement of Facts,

¶40.


On the issue of the debtor's misrepresentations regarding his

qualifications, on remand from the Appellate Division, the state court

determined that he lied about his background and experience to Audrey

Winograd by indicating that he was a Certified Public Accountant when that

was not true.  The defendant's misrepresentation in this regard violated the

Consumer Fraud Act, in particular, N.J.S.A. 56:8-2, which states in pertinent

part that:

> The act, use or employment by any person of any . . .
> misrepresentation or the knowing, concealment . . . or omission of
> any material fact with intent that others rely upon such
> concealment, suppression or omission, in connection with the sale
> or advertisement of any merchandise or real estate . . . whether or
> not any person has in fact been misled, deceived or damaged
> thereby, is declared to be an unlawful practice."

N.J.S.A. 56:8-2.

Specifically, regarding the defendants' Consumer Fraud Act violation based on Mr. Karpo's misrepresentation regarding his qualifications, the state court determined that:

> [i]t is clear from the testimony (and indeed has not been disputed by the defendants) that they provided a service to the plaintiffs. Thus, the definitions in <u>N.J.S.A.</u> 56:8-1(a) and (c) apply to the facts of our case.[5]  With that in mind it is clear that the Consumer Fraud Act was violated by Mr. Karpo's misrepresentation that he was a CPA.  The violation would also apply to the remaining defendants because Ms. Karpo was intimately involved in the operation of the business and was aware that her husband advertised himself to be a CPA and was further aware that he was not.
>
> I have reviewed the transcript of the trial; there is nothing in the testimony of Ms. Winograd or her son which would indicate that they retained the defendants because Mr. Karpo indicated that he was a CPA.  She testified at page 99-100 on October 17, 2006 that she went to the seminar put on by the defendants because she wanted to find somebody to help her prepare and file forms for financial aid.  While she referenced that Mr. Karpo talked about having been a CPA there is nothing in the testimony which would indicate that the representation somehow convinced her to retain the defendants.  I conclude that there is no ascertainable loss as defined by the statute because a fair reading of the testimony of the plaintiffs does not indicate that they retained the defendants because (or partially because) Mr. Karpo misrepresented the fact

---

[5]     The definitions referred to by the court are as follows:

(a) The term "advertisement" shall include the attempt directly or indirectly by publication, dissemination, solicitation, indorsement or circulation or in any other way to induce directly or indirectly any person to enter or not enter into any obligation or acquire any title or interest in any merchandise or to increase the consumption thereof or to make any loan;
    . . .
(c) The term "merchandise" shall include any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale.

N.J.S.A. 56:8-1(a), (c).

that he was a CPA.  Rather, the motivating force was that the
defendants would prepare and file the appropriate applications for
financial aid.

Exh. P-1 (Letter Opinion, 10/2/2009).

The state court also decided that in light of the Consumer Fraud Act

violation committed by the defendants, even without an ascertainable loss or

causal connection, attorneys' fees may be awarded to the defendants, both

under the Consumer Fraud Act and as a matter of public policy.  This award

was in addition to the judgment previously entered against the debtor for

breach of contract in the amount of $22,690.80 which remained intact.

Thus, the state court determined that while an unlawful practice, i.e., the

defendant's misrepresentation about his qualification, was committed by the

defendant in violation of the New Jersey Consumer Fraud Act, the plaintiffs

failed to establish a causal relationship between their ascertainable loss and

the unlawful conduct.  Under the Consumer Fraud Act, a plaintiff must

demonstrate that a merchant engaged in an "unlawful practice," as defined in

N.J.S.A. 56:8-2, and that the plaintiff "suffer[ed] [an] ascertainable loss . . .  as

a result of the use or employment" of the unlawful practice.  N.J.S.A. 56:8-19.

See also Lee v. Carter-Reed Co., 203 N.J. 496, 521, 4 A.3d 561, 576 (2010).

The movant must establish all three basic elements, including an unlawful

practice, an ascertainable loss, and "a causal relationship between the

unlawful conduct and the ascertainable loss."  Bosland v. Warnock Dodge, Inc.,

197 N.J. 543, 557, 964 A.2d 741, 749 (2009).  See also Ramanadham v. N.J.

Mfrs. Ins. Co., 188 N.J. Super. 30, 33, 455 A.2d 1134, 1136 (App. Div.

1982)(The plaintiff's ascertainable loss must be "proximate to a

misrepresentation or other unlawful act of the defendant condemned by the

Consumer Fraud Act.").

The issue becomes whether the conclusion drawn by the state court

regarding the lack of causal connection between the plaintiffs' ascertainable

loss and the defendant's unlawful conduct bars the relitigation of the element

of § 523(a)(2)(A) that requires a demonstration that the creditor sustained a

loss and damages as a proximate result of the defendant's materially false

representation.  We can readily conclude that the issue was actually litigated in

the state court by a full trial, that the court in the prior proceeding issued a

final judgment on the merits,[6] that the determination of the issue was essential

to the judgment, and that the party against whom collateral estoppel is

asserted was a party to the earlier proceeding.  The focus here is whether the

issue of lack of causal connection between the plaintiffs' losses and the debtor's

misrepresentation is identical to the issue presented here as an element of §

523(a)(2)(A), i.e., whether the creditors (the plaintiffs herein) sustained a loss

and damages as a proximate result of the debtor's materially false

representations.

---

[6]      See n.4, supra.

As noted, for a debt incurred by fraud to be nondischargeable under §
523(a)(2)(A), the creditor must have sustained a loss or damages as a proximate
result of the debtor's materially false representations.  <u>United States v. Spicer</u>,
57 F.3d 1152, 1157 (D.C. Cir. 1995), <u>cert. denied</u>, 516 U.S. 1043, 116 S. Ct.
701, 133 L.Ed.2d 658 (1996).  Though the causation element in fraud cases
demands more than "but-for" causation, <u>id.</u>, the Supreme Court has said that
"§ 523(a)(2)(A) bars the discharge of all liability arising from fraud."  <u>Cohen v.
de la Cruz</u>, 523 U.S. 213, 222, 118 S. Ct. 1212, 1218, 140 L.Ed.2d 341 (1998).
In several instances, the "proximate result" connection has been likened to the
"proximate cause" of torts.  <u>See</u> <u>Archer v. Warner</u>, 538 U.S. 314, 325-26, 123 S.
Ct. 1462, 1469-70, 155 L.Ed.2d 454 (2003) (Thomas, J. & Scalia, J.,
dissenting); <u>In re Britton</u>, 950 F.2d 602, 604 (9th Cir. 1991).  Thus "a plaintiff
must establish that a claim sought to be discharged arose from an injury
proximately resulting from the plaintiff's reliance on an intentionally made false
representation."  <u>In re Russell</u>, 203 B.R. 303, 313 (Bankr. S.D. Cal. 1996).

In considering whether the issues determined in the prior proceeding and
the issue sought to be barred in this proceeding are identical, the court should
consider "'whether there is substantial overlap of evidence or argument in the
second proceeding; whether the evidence involves application of the same rule
of law; whether discovery in the first proceeding could have encompassed
discovery in the second; and whether the claims asserted in the two actions are
closely related.'"  <u>Brennan v. Lonegan</u>, No. A-0274-09T1, 2010 WL 5140448, *4

(N.J. App. Div., Dec. 20, 2010), <u>certif. denied</u>, 206 N.J. 329, 20 A.3d 435 (2011)

(quoting <u>First Union Nat'l Bank v. Penn Salem Marina, Inc.</u>, 190 N.J. 342, 353,

921 A.2d 417, 424 (2007)).


Here, I must conclude that the issue determined in the state court, that

there was no causal connection between the defendant's misrepresentation and

the plaintiffs' ascertainable loss, and the issue to be barred from relitigation

here, that the plaintiffs sustained a loss and damages as a proximate result of

the debtor's materially false representation, are the same.  The evidence that

would be required to establish both issues is identical.  The concepts of "causal

connection" and "proximate result" may be said to be interchangeable.

Discovery on both issues would have been identical, and the claims asserted in

the two actions are closely related.  The same question is posed in both cases:

Without the debtor's misrepresentation, would the plaintiffs have hired him?

Even if I can conclude that the other elements of § 523(a)(2)(A), including that

the defendant made a material misrepresentation, that he knew the

representation was false at the time he made it, that he intended to deceive the

plaintiffs, and that the plaintiffs justifiably relied on the defendant's false

representation are established, the bar to relitigating the final element, that the

plaintiffs' loss was the proximate result of the debtor's materially false

representations, causes the plaintiffs' quest for nondischargeability to fail.

The plaintiffs attempt to overcome the impact of the state court ruling by offering the testimony of plaintiff Audrey Winograd.  I accepted the testimony without prejudice to a subsequent determination that the testimony could not be considered because an expansion of the state court record would constitute the relitigation of the issue.  Ms. Winograd testified that when she attended a seminar on financial aid led by the defendant Sanford Karpo, he presented himself as a former tax accountant and CPA who had represented clients in front of the Internal Revenue Service.  From strategies developed in that regard, he developed strategies to enhance the opportunity of families to increase the amount of financial aid that they receive from universities.  Because Ms. Winograd understood that obtaining financial aid, including the submission of financial information to universities, had much in common with tax work, she made the decision to retain the debtors' firm to assist her in applying for financial aid on behalf of her son.

Ms. Winograd also testified that on the basis of the defendant's representations regarding his status as a tax accountant and CPA, she followed his advice to move money around from her son's account to her own, in an attempt to maximize financial aid for her son.  She later discovered that the advice was wrong, and she incurred costs in connection with correcting the accounts.

I must conclude here that the testimony of Ms. Winograd presented before me may not be considered, because the parties fully litigated this issue in state court, and the plaintiffs are now collaterally estopped from relitigating the same issue. The New Jersey Supreme Court has declared that an issue has actually been litigated when there has been a "'full and fair opportunity'" for the parties to litigate the issue. Perez v. Rent-A-Center, Inc., 186 N.J. 188, 199, 892 A.2d 1255, 1261 (2006) (quoting Fama v. Yi, 359 N.J. Super 353, 359, 820 A.2d 65, 68 (App. Div. 2003)). In other words, a party that had an opportunity to present evidence of its choosing to a competent court on a particular issue is considered to have had a full and fair opportunity to litigate. Pivnick v. Beck, 326 N.J. Super. 474, 491, 741 A.2d 655, 665 (App. Div. 1999), aff'd, 165 N.J. 670, 762 A.2d 653 (2000). Though the plaintiffs complain that on remand, Ms. Winograd did not have the chance to testify as to whether she would have hired Mr. Karpo had it not been for his representation that he was a CPA, (Pl. Closing Brief at 8), the plaintiffs certainly had the opportunity to elicit this testimony at the initial trial.[7] The plaintiffs raised the New Jersey Consumer Fraud Act as a claim in their amended complaint. The Appellate Division remanded the case for the trial court to consider whether Sanford Karpo's misstatements were actionable under the Consumer Fraud Act, and

---

[7] The determination of the state court not to take testimony on remand prior to rendering its decision cannot be second-guessed by this court. The bankruptcy court is not an appellate forum for a state court decision. See District of Columbia Ct. of Appeals v. Feldman, 460 u.S. 462, 103 S. Ct. 1303, 75 L.Ed.2d 206 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 416, 44 S. Ct. 149, 149, 68 L.Ed. 362 (1923); Parkview Assocs. P'ship v. Lebanon, 225 F.3d 321, 324 (3d Cir. 2000).

the trial judge issued an opinion that specifically discussed issues of causation and ascertainable loss.  On this record, the issue of causation cannot be relitigated.

It should be noted that a civil court may decline to apply collateral estoppel on equitable principles, even where the doctrine might otherwise apply.  Olivieri v. Y.M.F. Carpet, Inc., 186 N.J. 511, 521-22, 897 A.2d 1003, 1009-10 (2006).  New Jersey courts have recognized that the following exceptions from the Restatement (Second) of Judgments may serve as bases to avoid the bar to litigating an issue that was previously determined in a prior proceeding:

> (1) The party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action; or
>
> (2) The issue is one of law and (a) the two actions involve claims that are substantially unrelated, or (b) a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws; or
>
> (3) A new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts or by factors relating to the allocation of jurisdiction between them; or
>
> (4) The party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action; the burden has shifted to his adversary; or the adversary has a significantly heavier burden than he had in the first action; or
>
> (5) There is a clear and convincing need for a new determination of the issue (a) because of the potential adverse impact of the

determination on the public interest or the interests of persons not themselves parties in the initial action, (b) because it was not sufficiently foreseeable at the time of the initial action that the issue would arise in the context of a subsequent action, or (c) because the party sought to be precluded, as a result of the conduct of his adversary or other special circumstances, did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action.

Id. at 523, 897 A.2d at 1010-11 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 28 (1982)). See also Gannon v. American Home Products, Inc., 414 N.J. Super. 507, 521-23, 999 A.2d 522, 530-31 (App. Div. 2010), certif. granted, 205 N.J. 101, 13 A.3d 364 (2011); Ivan v. County of Middlesex, 595 F.Supp.2d 425, 474-75 (D.N.J. 2009) (citing to New Jersey cases).

None of these factors are present here.  Not only could the plaintiffs have obtained review of the decision, they did in fact obtain review of the initial state court decision, which was then amended on appeal and on remand.  No new issues of law have arisen, and no new determination is warranted by the quality and extensiveness of the federal court procedures.  The burden of persuasion, a preponderance of the evidence, is identical in both the bankruptcy court and state court.  See Grogan v. Garner, 498 U.S. at 288, 111 S. Ct. at 660 ("it is fair to infer that Congress intended the ordinary preponderance standard to govern the applicability of all the discharge exceptions."); Liberty Mut. Ins. Co. v. Land, 186 N.J. 163, 179, 892 A.2d 1240, 1249 (2006) ("a preponderance of the evidence is applied to proceedings under

the CFA.").  Lastly, nothing in the record indicates that relitigation is appropriate based on the grounds listed in exception (5).

The fact that the state court awarded attorneys' fees to the plaintiffs under the New Jersey Consumer Fraud Act does not alter my conclusion that the plaintiffs must fail in their quest to declare the debt due to them to be nondischargeable.  The attorneys' fees awarded are certainly part of the debt due to the plaintiffs.  The New Jersey Supreme Court has determined that a private party may be awarded attorneys' fees in the event that a violation of the Consumer Fraud Act is found, where the party pleads a claim of ascertainable loss that is capable of surviving a motion for summary judgment, even if the fact finder ultimately determines that the loss has not been proven.  Weinberg v. Sprint Corp., 173 N.J. 233, 237, 801 A.2d 281, 283 (2002).  That is precisely what the state court found here, i.e., that the plaintiffs' claim of ascertainable loss could have survived a summary judgment motion, but ultimately was not proven.  The award of attorneys' fees does not further the plaintiffs' nondischargeability cause here.

Because the plaintiffs are unable to establish all of the requisite elements of a § 523(a)(2)(A) nondischargeability determination, I must conclude that this count of the plaintiffs' adversary complaint must be dismissed.

II.    <u>Denial of Discharge under § 727(a)(5)</u>.


The plaintiffs claim that the defendants cannot be granted a discharge

under § 727(a)(5) because the defendants have not given a satisfactory

explanation identifying all of the assets available to meet their liabilities.  The

plaintiffs contend that the six-figure amount of credit card charges, listed as

"various" on the debtors' schedules, do not correspond with the less than

$5,000 worth of assets that the debtors have listed elsewhere in their

schedules.  Compl. Count 2, ¶ 6.  In addition, at trial, the plaintiffs asserted

that, in prior depositions, Mr. Karpo claimed to have purchased stocks and

gambled with monies provided from credit card advances.


Section 727(a) requires that the court to grant the debtor a discharge

unless:  "(5) the debtor has failed to explain satisfactorily, before determination

of denial of discharge under this paragraph, any loss of assets or deficiency of

assets to meet the debtor's liabilities."  11 U.S.C. § 727(a)(5).  However, the

movant cannot simply make a bald allegation.  Rather:

> "'the plaintiff has the initial burden of identifying the assets in
> question by appropriate allegations in the complaint and showing
> that the debtor at one time had the assets but they are no longer
> available for the debtor's creditors.'" <u>In re Brien</u>, 208 B.R. 255,
> 258 (1ˢᵗ Cir B.A.P. 1997) (quoting <u>In re Potter</u>, 88 B.R. 843, 849
> (Bankr. N.D. Ill. 1988)).  The plaintiff "must introduce more than
> merely an allegation that the debtor has failed to explain losses,
> e.g., the objector must produce some evidence of the
> disappearance of substantial assets or of an unusual transaction
> which disposed of assets." <u>In re Ishkhanian</u>, 210 B.R. 944, 953
> (Bankr. E.D. Pa. 1997).  There is no requirement, however, that

the plaintiff show that the debtor acted fraudulently or
intentionally.  <u>Id</u>.

<u>In re Park</u>, 272 B.R. 323, 332 (Bankr. D.N.J. 2001).

Once the plaintiff has met his burden, "the burden shifts to the debtor to
satisfactorily explain the loss or deficiency."  <u>In re Coven</u>, Civ. A. 06-4323
(MLC), 2007 WL 1160332, *7 (D.N.J. April 17, 2007) (citing <u>In re Spitko</u>, 357
B.R. 272, 298 (Bankr. E.D. Pa. 2006)).  What constitutes a satisfactory
explanation "is a matter of discretion for the court."  <u>Id.</u>  However, the
explanation cannot be vague or indefinite.  <u>In re Spitko</u>, 357 B.R. at 319.  The
court's inquiry "must focus on the truth, detail, and completeness of the
debtor's explanation."  <u>In re Coven</u>, 2007 WL 1160332, at *7.

Upon cursory inspection of the credit card statements, the court has
found purchases from grocery stores, office supply stores, and the like, but no
purchases of valuable assets.  The plaintiffs have provided the court with a list
of what they have identified as questionable "Cash Advances," which indicate
that the debtors received over twenty thousand dollars in the years leading up
to the bankruptcy filing, including approximately $3,600 in the year of the
bankruptcy filing.  However, $20,000 over four years can hardly be considered
"substantial assets."

Mr. Karpo's testimony, taken in 2006, that he used credit card advances to pay off other credit card balances and to purchase stocks, Exh. P-46, at 31-32, does not support the plaintiffs' assertion that the debtors had any significant assets that they are now concealing from their creditors; if anything, the testimony shows that the debtors did not have assets sufficient to meet their liabilities years before the bankruptcy filing.  As well, the debtors' stock brokerage statements, relied upon by the plaintiffs, show that, in September 2006, the debtors had approximately $12,000 in securities.  Exh. P-45.  No evidence is offered about the defendants' stock holdings, if any, during the three years between the last brokerage statement and the debtors' bankruptcy filing on October 29, 2009.  In short, because the plaintiffs have failed to "produce some evidence of the disappearance of substantial assets or of an unusual transaction which disposed of assets", In re Ishkhanian, 210 B.R. at 953, their quest to deny the debtors their discharge pursuant to § 727(a)(5) must be rejected.


III.   Denial of Discharge under § 727(a)(4)(A)


Section 727(a)(4)(A) states that a court will grant a discharge unless:  "(4) the debtor knowingly and fraudulently, in or in connection with the case--(A) made a false oath or account."  11 U.S.C. § 727(a)(4)(A).  The plaintiffs assert that the debtors are attempting to hide their business, College Financial Aid

Services, and their business assets and that they have made false oaths or

accounts to the court in their bankruptcy petition.  Compl. Count 3, ¶ 7.

A party moving for a denial of discharge must prove the elements of §

727(a)(4)(A) by a preponderance of the evidence.   In re Georges, 138 Fed.Appx.

471, 472 (3d Cir. 2005).  The movant must establish that:

1. the debtor made a false statement under oath;

2. the debtor knew the statement was false;

3. the debtor made the statement with the intent to deceive; and

4. the statement was material to the bankruptcy case.

In re Singh, 433 B.R. 139, 154 (Bankr. E.D. Pa. 2010) (citing Cadle Co. v.

Zofko, 380 B.R. 375, 382 (W.D. Pa. 2007)).  For a false oath or account made

by the debtor to be material, the subject matter must relate to "'the bankrupt's

business transactions or estate, or concern[] the discovery of assets, business

dealings, or the existence and disposition of his property.'"  Id. (quoting Cadle

Co., 380 B.R. at 383).  Furthermore, for a discharge to be denied, the

misrepresentation must be willful and intentional.  Id.  An honest mistake or

oversight is not sufficient reason to deny the debtor a discharge.  Id.

Here, the petitioners assert that the debtors not only failed to list the

debtors' business under the statement of financial affairs, but also that they

failed to list any accounts receivable or a sufficient amount of office equipment.

The petitioners have not shown that the debtors willfully and intentionally hid their business or business assets.  Though the debtors did fail to list their business on their Statement of Financial Affairs ["SOFA"], they included the business name ("College Financial Aid Services") as an alternate name for each debtor on the first page of their petition.  In addition, the debtors listed, in Part 1 of their SOFA, income each year from a source identified as "Business."  It is entirely plausible that the debtors simply did not understand that they needed to also list the sole proprietorship in Part 18 of the SOFA.

As for the accounts receivable and office equipment, the petitioners have brought forward no evidence to show that the debtors have any accounts receivable or more than $200 of office equipment that the debtors have already listed.  Therefore, the petitioners have not met their burden of proof to show willful and intentional misrepresentations on the part of the debtors for purposes of § 727(a)(4).

## **CONCLUSION**

The court must deny the plaintiffs' claim for nondischargeability under § 523(a)(2)(A) because the elements required for nondischargeability cannot be established.  In addition, the plaintiffs have not met their burden of proof to deny the debtors their discharge under §§ 727(a)(4) and (a)(5).  The plaintiffs' complaint is hereby dismissed in its entirety with prejudice.

Dated:   July 22, 2011

JUDITH H. WIZMUR
CHIEF JUDGE
U.S. BANKRUPTCY COURT